**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 24-388** |
| **v.** | : | **DATE FILED: November 20, 2025** |
| **BRAIDEN WILLIAMS** | : | **VIOLATIONS:**<br>**18 U.S.C. § 1349 (conspiracy to commit wire fraud – 1 count)**<br>**18 U.S.C. § 1028A (aggravated identity theft – 1 count)**<br>**18 U.S.C. § 1956(h) (conspiracy to commit money laundering – 1 count)**<br>**18 U.S.C. §§ 2261A(2)(B), 2261B(a) (cyberstalking of a minor – 1 count)**<br>**18 U.S.C. § 844(e) (maliciously conveying false information about explosives – 1 count)**<br>**18 U.S.C. § 3147 (commission while on release)**<br>**Notices of forfeiture** |

## SUPERSEDING INFORMATION

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

**Relevant Individuals, Entities, and Definitions**

1. "Cryptocurrency" was a class of financial instruments that allowed the transfer of value between individuals without any third-party mediation or government regulation. Cryptocurrencies existed entirely in digital format and not in any physical form. Such cryptocurrency was not issued by any government, bank, or company, but rather was generated and controlled automatically through computer software operated on a decentralized, "peer-to-

peer" network sometimes using the "Blockchain" concept. The Blockchain for cryptocurrencies was the record of every transaction that had ever occurred in that particular cryptocurrency. It was often referred to as a "ledger" of all transactions. This transfer of cryptocurrency was accomplished with a set of cryptographic protocols. These protocols required that each transaction's sender and receiver held an appropriate cryptographic key. Examples of cryptocurrencies in widespread use included Bitcoin and Ethereum.

2. Cryptocurrencies were traded on cryptocurrency exchanges or marketplaces, where users could buy, sell, and trade cryptocurrencies. These exchanges were entirely digital, and transactions were typically performed over the Internet. Some cryptocurrency exchanges allowed direct conversions of cryptocurrencies into government-backed currencies such as U.S. dollars, while other exchanges only allowed buying, selling, and trading of cryptocurrencies.

3. "Social engineering" is a type of fraud scheme wherein individuals call a potential victim and "socially engineer," or trick them into providing passwords, pins, and other personal information that the callers use to gain unauthorized access to the victim's private accounts, including cryptocurrency accounts, email accounts, bank accounts, and other valuable personal files.

4. A "caller" is the name commonly used for the individuals involved in social engineering schemes who place calls to potential victims and falsely portray themselves as representatives of cryptocurrency exchanges or online account providers. Their goal is to give the victim enough confidence in their character that the victim will provide access to their online accounts.

5. “Multi-factor authentication” or “MFA” is an electronic authentication method in which a user is granted access to an online application or account only after successfully presenting two or more distinct types of evidence (or factors) to an authentication mechanism. MFA is commonly accomplished by generating and sending numeric codes via text to a user’s cellular telephone number or via email to a user’s email account.

6. Subscriber Identity Module (“SIM”) cards serve to identify a mobile phone on a mobile network belonging to telecommunications service provider.

7. “SIM swapping” is a type of account takeover fraud that exploits weaknesses in authentication mechanisms targeting mobile telephones, allowing an unauthorized individual to take over a victim’s telephone communications. The SIM card associated with a victim’s account and/or telephone number is switched with a SIM card in a device controlled by an unauthorized individual. This is also known as “porting” the victim’s telephone number. By doing so, the unauthorized individual gains control of the victim’s telephone number.

8. A “holder” is the name commonly used for the individual in a SIM swapping scheme who holds the device that receives the victim’s calls and messages once the SIM card has been switched and/or the victim’s phone number has been ported. This individual receives the MFA codes needed to gain access to the victim’s cryptocurrency or other online accounts and passes that code on to another individual who then accesses the victim’s accounts.

**THE CONSPIRACY**

9. From at least in or about December 2020 through on or about May 17, 2023, in the Eastern District of Pennsylvania and elsewhere, while on release pursuant to an order of the United States District Court for the District of Kansas, Case No. 2022-mj-8157, dated on or about July 27, 2022, issued pursuant to Title 18, United States Code, Section 3142(c), and an order of

the United States District Court for the District of Northern California, Case No. 2022-mj-70962, dated on or about March 30, 2023, issued pursuant to Title 18, United States Code, Section 3142(c), defendant

**BRAIDEN WILLIAMS**

conspired and agreed, with other individuals known and unknown to the United States Attorney, to commit wire fraud, that is, to knowingly devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

**OBJECT OF THE CONSPIRACY**

10. The object of the conspiracy was for the conspirators to enrich themselves by:

a. Identifying victims who owned funds in accounts held at cryptocurrency exchanges;

b. Gaining access to the victims' accounts without authorization;

c. Draining the victims' accounts by transferring funds to cryptocurrency addresses the conspirators controlled; and

d. Dividing the stolen proceeds among themselves.

**MANNER AND MEANS**

It was part of the conspiracy that:

11. The conspirators obtained and collected databases containing personal identifying information of individuals, which they used to identify potential victims who held accounts at cryptocurrency exchanges.

12. In many instances, the conspirators engaged in SIM swapping attacks, in which they took control of victims' phone numbers. Sometimes, they did so through corrupt telecommunications employees who had access to the telecommunications networks and could switch the SIM cards/port the victim's phone number to a new device. Other times, the conspirators engaged in social engineering of telecommunications employees, pretending to be customers or other employees trying to assist customers; the conspirators tricked the employees into revealing customer account information, which they then used to reset customer passwords.

13. Once the conspirators changed a victim's phone number to a device controlled by another conspirator (*i.e.*, the holder), the holder received the requisite MFA codes and relayed them to the other conspirators. The conspirators then used these MFA codes to access the victims' cryptocurrency and other online accounts.

14. In other instances, the conspirators contacted victims directly via text messages, emails, Internet voice calls, and other means of communication purporting to be employees from cryptocurrency exchanges. Using social engineering tactics, the conspirators convinced the victims that the callers were employees of cryptocurrency exchanges. The conspirators caused text messages, voice calls, links, and push notifications to be sent to victims which tricked victims into providing account log-in information, passwords, MFA codes, and other means of identification to the conspirators.

15. In still other instances, the conspirators used leaked database information and/or personal information sold on black markets to gain access to victims' online accounts.

16. The conspirators used the fraudulently obtained log-in information, passwords, MFA codes, and other means of identification to access victims' accounts at cryptocurrency exchanges, and to access other online accounts belonging to the victims, and transferred the victims' cryptocurrency into wallets controlled by the conspirators.

17. In connection with this scheme, between December 2020 and May 17, 2023, the conspirators targeted hundreds of victims across the United States, including in the Eastern District of Pennsylvania, and abroad, gained access to at least 200 victim accounts, and stole at least $6.4 million from victim accounts.

All in violation of Title 18, United States Code, Sections 1349 and 3147.

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

At all times material to this information:

1. Paragraphs 1 through 9 and 11 through 17 of Count One of this information are incorporated here.

2. On or about April 3, 2022, in the Eastern District of Pennsylvania and elsewhere, defendant

**BRAIDEN WILLIAMS**

knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the telephone number of J.F., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud, knowing that the means of identification belonged to another real person.

In violation of Title 18, United States Code, Section 1028A(a)(1), (c)(1)(5).

## COUNT THREE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

At all times material to this information:

1. Paragraphs 1 through 9 and 11 through 17 of Count One of this information are incorporated here.

2. Once they obtained victims' funds, the coconspirators laundered the funds by transferring them through a multitude of cryptocurrency addresses, splitting the proceeds amongst each other. They also frequently converted the stolen funds to other types of cryptocurrency and used online gambling sites to conceal the source of the funds.

**THE SCHEME**

3. From at least in or about December 2020 through on or about May 17, 2023, in the Eastern District of Pennsylvania and elsewhere, while on release pursuant to an order of the United States District Court for the District of Kansas, Case No. 2022-mj-8157, dated on or about July 27, 2022, issued pursuant to Title 18, United States Code, Section 3142(c), and an order of the United States District Court for the District of Northern California, Case No. 2022-mj-70962, dated on or about March 30, 2023, issued pursuant to Title 18, United States Code, Section 3142(c), defendant

**BRAIDEN WILLIAMS**

conspired and agreed with others known and unknown to the United States Attorney, to conduct and attempt to conduct financial transactions affecting interstate commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which, in fact, involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were

designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Sections 1956(h) and 3147.

## COUNT FOUR

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

From in or about June 2021 through on or about May 17, 2023, in the Eastern District of Pennsylvania, and elsewhere, while on release pursuant to an order of the United States District Court for the District of Kansas, Case No. 2022-mj-8157, dated on or about July 27, 2022, issued pursuant to Title 18, United States Code, Section 3142(c), and an order of the United States District Court for the District of Northern California, Case No. 2022-mj-70962, dated on or about March 30, 2023, issued pursuant to Title 18, United States Code, Section 3142(c), defendant

**BRAIDEN WILLIAMS,**

with the intent to injure, harass, and intimidate the residents of Address A, used interactive computer services, electronic communication services, electronic communication systems of interstate commerce, and facilities of interstate commerce to engage in a course of conduct, including but not limited to sending numerous threatening and harassing text messages to Victim 1 (a person under the age of 18 years), and making frequent swatting calls involving Address A that caused police, SWAT teams, firefighters, plumbers, food delivery persons and other unsolicited individuals to go repeatedly to Address A, thereby harassing Victims 2 and 3, and aided and abetted such conduct, that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to Victims 1, 2 and 3.

In violation of Title 18, United States Code, Sections 2261A(2)(B), 2261B(a), 3147 and 2.

## COUNT FIVE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

On or about May 12, 2023, in the Eastern District of Pennsylvania, and elsewhere, while on release pursuant to an order of the United States District Court for the District of Northern California, Case No. 2022-mj-70962, dated on or about March 30, 2023, issued pursuant to Title 18, United States Code, Section 3142(c), defendant

**BRAIDEN WILLIAMS,**

through the use of the telephone and other instruments of interstate commerce, and in and affecting interstate commerce, maliciously conveyed false information to multiple entities, that is, approximately 300 schools and news outlets, knowing the same to be false, and aided and abetted such malicious conveyance of false information, concerning alleged attempts being made to kill individuals and unlawfully destroy school buildings across the country, by means of explosives.

In violation of Title 18, United States Code, Sections 844(e) and 3147.

## NOTICE OF FORFEITURE #1

**THE UNITED STATES ATTORNEYURY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 18, United States Code, Section 1349, set forth in this information, defendant

**BRAIDEN WILLIAMS**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, including, but not limited to

a. Rolex Submariner watch, silver in color, Model: 124060, S/N 3L19G0845 in green box labeled Rolex;

b. Diamond necklace with "Top 1%" pendant;

c. Christian Louboutin shoes, white in color with silver in color studs;

d. Prada shoes, black in color with white sole;

e. Off-White shoes, white in color;

f. Christian Louboutin shoes, white in color with orange and blue detail;

g. Louis Vuitton shoes, black in color;

h. Louis Vuitton satchel, black and gray in color;

i. Louis Vuitton belt, black and gray in color with "LV" buckle;

j. Louis Vuitton wallet, black and gray in color;

k. Trezor hardware wallet;

l. Full bottle of Dom Perignon champagne, 2010 vintage with gift box;

m. 1.26807233 BTC;

n. 0.70396295 ETH;

o. 4.0483135 BTC within an Exodus wallet;

p. 5.5890461 ETH within an Exodus wallet; and

q. $45,000 USDT within an Exodus wallet.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

**NOTICE OF FORFEITURE #2**

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 18, United States Code, Section 1956(h) set forth in this information, defendant

**BRAIDEN WILLIAMS**

shall forfeit to the United States of America any property, real or personal, involved in such offenses, and any property traceable to such property, including, but not limited to

a. Rolex Submariner watch, silver in color, Model: 124060, S/N 3L19G0845 in green box labeled Rolex;

b. Diamond necklace with "Top 1%" pendant;

c. Christian Louboutin shoes, white in color with silver in color studs;

d. Prada shoes, black in color with white sole;

e. Off-White shoes, white in color;

f. Christian Louboutin shoes, white in color with orange and blue detail;

g. Louis Vuitton shoes, black in color;

h. Louis Vuitton satchel, black and gray in color;

i. Louis Vuitton belt, black and gray in color with "LV" buckle;

j. Louis Vuitton wallet, black and gray in color;

k. Trezor hardware wallet;

l. Full bottle of Dom Perignon champagne, 2010 vintage with gift box;

m. 1.26807233 BTC;

n. 0.70396295 ETH;

o. 4.0483135 BTC within an Exodus wallet;

p. 5.5890461 ETH within an Exodus wallet;

q. $45,000 USDT within an Exodus wallet

r. Apple iPhone, red in color;

s. Apple Macbook Air, Model A1534, S/N C02Q45YPGCN3;

t. Dell Inspiron laptop, S/N 791606246;

u. Straight Talk SIM card for iPhone;

v. HP laptop, S/N TW03901224;

w. Metallic Blue iPhone 12 Pro Max (cracked screen) in a white case with IMEI 359237635418036;

x. Gold and white iPhone 7 with IMEI 355831082883488

y. Black iPhone; and

z. Apple laptop Model A1706 serial # C02SX6G2GYFH with charger.

2. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred to, sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of this Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(1).

Christine E Sykes for

**DAVID METCALF**
**UNITED STATES ATTORNEY**

*No.*___________

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

BRAIDEN WILLIAMS

SUPERSEDING INFORMATION

18 U.S.C. § 1349 (conspiracy to commit wire fraud – 1 count)
18 U.S.C. § 1028A (aggravated identity theft – 1 count)
18 U.S.C. § 1956(h) (conspiracy to commit money laundering – 1 count)
18 U.S.C. §§ 2261A(2)(B), 2261B(a) (cyberstalking of a minor – 1 count)
18 U.S.C. § 844(e) (maliciously conveying false information about explosives – 1 count)
18 U.S.C. § 3147 (commission while on release)

A true bill.

______________________________
Foreperson

Filed in open court this ______________________day,
Of ________________A.D. 20__________

______________________________
Foreperson

Bail, $____________