UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,          CRIMINAL ACTION

    Plaintiff,                     NO. 2:24-cr-00388-GJP-1

      vs.                        United States Courthouse
                                   Philadelphia, PA
BRAIDEN WILLIAMS,                  November 20, 2025
                                   10:06 a.m.
    Defendant.
.............................................................

TRANSCRIPT OF ARRAIGNMENT AND GUILTY PLEA HEARING
BEFORE THE HONORABLE GERALD J. PAPPERT
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For The Plaintiff:                 Sarah M. Wolfe, Esq.
                                   U.S. Attorney's Office
                                   615 Chestnut Street,
                                   Suite 1250
                                   Philadelphia, PA 19106


For The Defendant:                 Justin C. Danilewitz, Esq.
                                   Saul Ewing, LLP
                                   1735 Market Street,
                                   Suite 3400
                                   Philadelphia, PA 19103


Audio Operator:                    Katie Rolon

Transcribing Firm:                 Velvet Quill Communications
                                   3880 Greenhouse Road, Suite 118
                                   Houston, TX 77084
                                   855-615-1385


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

Index

|  | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|
| Witnesses For The Plaintiff: | | | | | |
| None | | | | | |
| Witnesses For The Defendant: | | | | | |
| None | | | | | |

| EXHIBITS: | Marked | Received |
|---|---|---|
| None | | |

SUMMATION BY:


THE COURT: Finding

(Call to Order of the Court.)

(Defendant present.)

THE COURT:  Thank you for all your hard work over the last few days.  I know there was a lot to come together, so I appreciate that.  All right.

MS. WOLFE:  Thank you for your flexibility in scheduling.

THE COURT:  Yes.

MS. WOLFE:  We appreciate that.

THE COURT:  No problem.  No problem.

All right.  Mr. Danilewitz, good to see you again.

MR. DANILEWITZ:  Good to see you, Your Honor.  Good morning.

THE COURT:  And, Mr. Williams, good morning.

Ms. Wolfe, hi.

MS. WOLFE:  Good morning.

THE COURT:  Agent, how are you doing?  Good.

UNIDENFIFIED SPEAKER:  Doing well.  Thank you, Your Honor.

THE COURT:  Okay.  So we're here in the case of -- by the way, and I assume that this is an arraignment and plea to the Second Superseding?

MS. WOLFE:  Correct, Your Honor.

THE COURT:  Yeah.  Okay.

Superseding, not Second Superseding?

MS. WOLFE:  Right.  Not Second.

THE COURT:  Yeah, sorry about that.

We're here today in the case of The United States versus Braiden Williams.  It's Case 24-388.  Mr. Williams has been charged by superseding information with five counts.

First, conspiracy to commit wire fraud, in violation of 18, United States Code, Sections 1349 and 3147; aggravated identity theft, in violation of 18, United States Code, Section 1028(a); conspiracy to commit money laundering, in violation of 18, United States Code, Sections 1956(h) and 3147; cyberstalking of a minor, in violation of 18, United States Code, Sections 2261A(2)(B), 2261B(a) and 3147; and maliciously conveying false information about explosives, in violation of 18, United States Code, Sections 844(e) and 3147.

Those are Counts 1 through 5, respectively, of the superseding information.

And the purpose of our proceeding today is to arraign the Defendant and for him to enter a plea to the superseding information, pursuant to a written guilty plea agreement.

So, Mr. Danilewitz, if you and Mr. Williams could please come forward and Ms. Rolon can swear in Mr. Williams, and we can begin.

MR. DANILEWITZ:  Yes, Your Honor.

**BRAIDEN WILLIAMS, DEFENDANT, SWORN**

THE DEPUTY CLERK:  Can you please state your full name

for the record?

THE DEFENDANT:  Braiden Williams.

THE DEPUTY CLERK:  Thank you.

THE COURT:  All right.  Mr. Williams, have you ever used or gone by any other names other than Braiden Williams?

THE DEFENDANT:  No, Your Honor.

THE COURT:  What's your -- do you have a middle name?

THE DEFENDANT:  Carroll.  Carroll.

THE COURT:  C-A-R?

THE DEFENDANT:  C-A-R-R-O-L-L.

THE COURT:  Very good.  Mr. Williams, I'm going to ask you a series of questions this morning and assume that the answers that you give me are the truth.  Is that understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And since you're now sworn and under oath, do you understand that your answers to my questions will be subject to the penalties of priority perjury or making a false statement if you do not tell the truth?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You also understand I will ask you questions in order to satisfy myself that you are competent, able to enter a plea, and that you are knowingly and voluntarily giving up your rights and entering your plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If at any time you do not hear or

understand what I am asking you or saying to you, tell me and I will repeat it or rephrase it.  All right?

THE DEFENDANT:  All right.

THE COURT:  And if at any time you wish to talk to your lawyer, tell me.  You will be allowed to do that.  Okay?

THE DEFENDANT:  All right.

THE COURT:  Please also be sure to speak your answers as opposed to nodding or shaking your head so that we have an accurate transcript of our proceeding today.  All right?

THE DEFENDANT:  Okay.

THE COURT:  Sir, has anyone given you any directions not to tell the truth here today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And how old are you, sir?

THE DEFENDANT:  I'm 23 years old, Your Honor.

THE COURT:  Twenty-three?

THE DEFENDANT:  Yes, sir.

THE COURT:  And what is your level of education?

THE DEFENDANT:  I have a high school education; I have my diploma.  And I did some college, Your Honor.

THE COURT:  Where'd you graduate high school?

THE DEFENDANT:  Iola High School, Your Honor.

THE COURT:  Iowa?

THE DEFENDANT:  Iola High School, in Kansas.

THE COURT:  Iola.  Okay.

And you took some college classes?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Whereabouts?

THE DEFENDANT:  I did college at Allen County Community College in Iola, Kansas, Your Honor.  And Kansas State University.

THE COURT:  What was your most recent employment?

THE DEFENDANT:  I did one week at Tramec in Iowa, Kansas.  It's a trucking manufacturing company for air brakes, Your Honor.

THE COURT:  Okay.  Mr. Williams, have you taken any drugs, medications, or pills of any kind, and that would mean illegal drugs, prescription medications, over the counter medications, anything at all, in the last 24 hours?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have you consumed any alcoholic beverages in the last 24 hours?

THE DEFENDANT:  No, Your Honor.

THE COURT:  How do you feel today?

Are you lightheaded or dizzy in any way?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you confused in any way?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you able to think clearly today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT: Do you feel that your judgment is impaired in any way?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you able to hear and understand what I am saying or asking you and give me your best truthful responses?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you able to understand the nature and the consequences of today's proceedings?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you ever been hospitalized or treated in any way, inpatient, outpatient, prescription medication, therapy sessions, anything at all, for any form of mental illness, which would include anxiety, depression, anything at all?

THE DEFENDANT: Your Honor, I have ADHD and autism. I'm prescribed Adderall, but I haven't been taking it for the three years that I've been incarcerated, Your Honor.

THE COURT: Okay. Are you able to take it?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you asked to take it?

THE DEFENDANT: Yes, Your Honor. But they do not prescribe narcotics in the federal system, Your Honor.

THE COURT: So they won't give you ADHD medication?

THE DEFENDANT: No, Your Honor.

THE COURT:  All right.  How about with respect to any other condition, mental health condition, anxiety, depression, anything at all?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have you ever been treated in any way for any form of addiction to drugs?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have you ever been treated in any way for any form of addiction to alcohol?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you currently or have you recently been under the care of a physician for any purpose?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have you -- are you currently or have you recently been under the care of a mental health professional for any purpose?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you understand that you have the right to be represented by an attorney at every stage of the proceeding against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that if you cannot afford the services of an attorney to try your case, one will be appointed to represent you?

THE DEFENDANT:  Yeah, Your Honor.

THE COURT: And, in fact, you have an attorney here with you today, and that's Mr. Danilewitz, correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And Mr. -- thank you again for --

MR. DANILEWITZ: Of course, Your Honor.

THE COURT: -- your work on the CJ Panel and for your representation in this case. We appreciate it.

MR. DANILEWITZ: It's my pleasure. Thank you, Your Honor.

THE COURT: Thank you.

Mr. Williams, have had -- have you had enough opportunity to discuss your case with your lawyer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you had enough time to talk to your lawyer about your case and specifically about today's proceeding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you satisfied with your attorney's representation?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you received a copy of the superseding information, that is the document that contains the written charges that were made against you by the United States Attorney?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And I listed those charges at the beginning of our proceeding today.

Have you had the opportunity to talk to your lawyer about all of the charges that have been made against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand the charges against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that these charges have been brought by the United States Attorney through the filing of what we call an information?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that you are charged in the superseding information with the commission of a number of felony offenses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that you have a constitutional right to be charged with a felony through an indictment by the grand jury?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that you can waive your right to be charged by indictment and agree to be charged by information?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that unless you waive indictment, you may not be charged with a felony by an information?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you do not waive indictment, the Government may present this case to the grand jury and request that it indict you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that a grand jury is composed of at least 16 and not more than 23 persons, and that at least 12 grand jurors must find that there is probable cause to believe that you committed the crimes with which you are charged before you may be indicted?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that the grand jury might or might not indict you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you waive indictment by the grand jury, the case will proceed against you on the United States Attorney's superseding information just as if you had been indicted?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you discussed the matter of waiving your right to indictment by the grand jury with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have there been any threats or promises made to you to induce you to waive your right to indictment?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you wish to waive your right to indictment by the grand jury?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Does Counsel see any reason why Mr. Williams should not do so?

MR. DANILEWITZ:  I do not, Your Honor.

THE COURT:  Okay.

And have we signed the waiver of indictment form?

MR. DANILEWITZ:  Yes, Your Honor.

May I -- May I approach, Your Honor?

THE COURT:  Yeah.  Thank you.

(Document proffered to Court.)

THE DEPUTY CLERK:  Thank you.

MR. DANILEWITZ:  Your Honor, may I have a minute with my client?

THE COURT:  Of course.

MR. DANILEWITZ:  Thank you.

THE COURT:  Absolutely.

(Pause in proceedings.)

MR. DANILEWITZ:  Thank you, Your Honor.

THE COURT:  Any time.

And, Mr. Williams, I have here a waiver of indictment

form dated today.  Is that your signature on the form?  Did you sign this here this morning?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Before you signed your Waiver of Indictment, did you read it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And did you discuss it to your satisfaction with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  At this time, Mr. Williams, if you wish, the information, superseding information, can be read aloud in open Court.

Do you want the information, superseding information, to be read, or do you wish to waive reading of the superseding information?

THE DEFENDANT:  I wish to waive reading.

I've already read it, Your Honor.

THE COURT:  Okay.  Well, having heard a summary of the charges against you as contained in the superseding information, and having now waived reading of the full superseding information, how do you wish to plead to the charges in the superseding information?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  And I know that the guilty plea has been made pursuant to a written guilty plea agreement.

Ms. Wolfe, would you, please, go over -- it is a lengthy document. I've read it.

Would you, please, go over for us just the material terms of the guilty plea agreement between the parties?

So, Mr. Williams, are those at least some of the material terms of your guilty plea agreement with the Government as you understand them?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And have you signed the guilty plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Before you signed your guilty plea agreement, did you read it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you discuss it to your satisfaction with your lawyer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand the document?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And attached to your guilty plea agreement is what we call a -- an acknowledgement of rights form.

Same questions for you on that. Did you sign your acknowledgment of rights form?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Before you signed it, did you read the

rights that you have as stated in that document?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand your rights?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And were you able to discuss, to your satisfaction, all of those rights and that form with your lawyer before you signed it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions for counsel on either your guilty plea agreement or your rights before I continue?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Sir, has anyone made any threats or promises or assurances to you of any kind, other than what is set forth in your guilty plea agreement, to convince you or to induce you to plead guilty in this case?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And I have a copy, Justin, that was dated yesterday.  Is that when you and your client reviewed and signed --

MR. DANILEWITZ:  That's right, Your Honor.

THE COURT:  -- the guilty plea agreement?

THE DEFENDANT:  That's exactly right.

THE COURT:  And you signed this yesterday, Mr. Williams?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.

And here is the original.  Make sure get that back to you, the original waiver form there.

All right.  I know you did read -- you went over your rights with counsel, and you read those on the form.  I'd like to discuss your rights a little bit more fully here.

First of all, do you understand that you are entitled to plead not guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you plead not guilty, you would have the right to be tried by a jury or by a judge without a jury?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you plead not guilty, that through your attorney, you could participate in the selection of the jury which would hear your case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you plead not guilty, you have the right to be tried with the assistance of counsel?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that at trial you would be presumed to be innocent?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that the Government would be required to prove that you are guilty by competent evidence and beyond a reasonable doubt?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So understand you never have to prove you're innocent.  It's always on the Government to prove that you're guilty.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Now, do you understand that in the course of a trial, witnesses for the Government would have to come to Court and testify in your presence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that you would have the right to confront those witnesses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that your lawyer could cross-examine the Government's witnesses, object to any evidence offered by the Government, and offer evidence on your behalf?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand that by pleading guilty, you are giving up your right to challenge the manner in which the Government obtained any and all evidence against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  By pleading guilty, you are giving up your right to challenge the charges in this case, the manner in

which the Government investigated and prosecuted the case, and any other matter which arose prior to your guilty plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that at trial you have the right to subpoena and compel the attendance of witnesses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that you would have the right to present witnesses, including character witnesses, whose testimony could raise a reasonable doubt about your guilt?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that at a trial, while you would have the right to testify if you chose to do so, you would also have the right not to testify?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that no inference or suggestion of guilt could be drawn from the fact that you chose not to testify.  That decision could not be used against you in any way.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that you have the right not to be compelled to incriminate yourself?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that your lawyer could argue to a jury or the Court on your behalf and against the Government's case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand that you could only be convicted by a jury which unanimously found you guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If at trial you were found guilty, do you understand that after the trial, you would be able to appeal the verdict to an appellate court?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that you could have a lawyer represent you on such an appeal?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that the appellate court might reverse your conviction?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I want to now discuss with you the rights you are giving up through your guilty plea agreement and your plea here today, with respect to your ability to appeal both your conviction, and then we'll talk separately about the sentence you might receive.  Okay?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Do you understand that by pleading guilty, you are giving up your right to appeal your conviction?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you plead

guilty, this will prevent you from using later proceedings like collateral attack or habeas corpus to challenge your conviction, your sentence, or any other matter?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  There is one exception to that.  Do you understand that the only situation where you could collaterally attack your sentence, that's collateral attack, as opposed to a direct appeal.

The only way you could collaterally attack your sentence would be to file a petition under 28, United States Code, Section 2255 and claim that your lawyer provided constitutionally ineffective assistance at the time you executed your plea agreement and entered your guilty plea.

Do you understand that one exception?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that by pleading guilty, you are also greatly limiting your right to appeal your sentence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand that the only appeal you could take from your sentence would be if you were to qualify under one of the following four exceptions, which are stated in your guilty plea agreement, specifically on pages 14 and 15.

First, if the Government were to appeal your sentence, you would be allowed to do so.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Second, if your sentence exceeds the statutory maximum penalty, you would be allowed to appeal that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Third, if the -- if I were to depart upward pursuant to the guidelines -- though, Counsel, I think that one's kind of --

MS. WOLFE:  Yes, Your Honor.

THE COURT:  That's -- that one's kind of obsolete now, right?

MS. WOLFE:  Yes, it is.

THE COURT:  Yeah.

MS. WOLFE:  You're right.

THE COURT:  Okay.  I wonder, going forward, how we're going to handle that, whether there's just going to be three exceptions, or?

MS. WOLFE:  I will check --

THE COURT:  Have you had any --

MS. WOLFE:  I will check with our appellate chief and see what language he prefers.

THE COURT:  Oh, he knows all.  He knows it all.

MS. WOLFE:  He knows it all.

THE COURT:  Yeah.  For now, as it's stated in the guilty plea agreement, if I were to depart upward pursuant to the guidelines, Mr. Williams, you could appeal that decision on

my part.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And finally, if I were to impose a sentence on you that is above the Sentencing Guideline range, you would be allowed to appeal that.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that the four exceptions I just went over, those that would allow you to appeal your sentence, occur very infrequently and are unlikely to occur in your case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So that means don't count on those being available to you.  Okay?

THE DEFENDANT:  All right, Your Honor.

THE COURT:  All right.  Now, if you plead guilty and I accept your plea, do you understand that you will waive, that means you will give up forever, your right to a further trial of any kind, as well as all of the other rights we've just gone over, and that there will be no trial?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  Do you understand that if you plead guilty, I will enter a judgment of guilty, and then I will sentence you on the basis of your guilty plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And when I sentence you, there is a --

there are some required -- requirements and things I must consider under the law to come up with an appropriate sentence for you.

I will take into account the advice of the Sentencing Guidelines, which I assume you and your lawyer have discussed, right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  There are other legal factors that I'll touch on in a minute that I'm required to consider, and then the information in the Presentence Investigation Report.

Do you understand generally that that's how the process will work at your sentencing, and that that's the information I will use to determine what I believe to be an appropriate sentence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Now, I mentioned a minute ago some legal factors that I'm required to consider in deciding your sentence.

And those include, but are not limited to, the nature and the circumstances of your offenses, your history and characteristics, and the need for the sentence to reflect the seriousness of your crimes, to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct, to protect the public from further crimes you might commit, and the need to provide restitution to victims.

Do you understand that those are just some of the things the law requires me to take into account in deciding your sentence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I want to go over with you now what we call the essential elements of the crimes with which you have been charged and to which you are pleading guilty today.

And I do this so that you understand what the Government would have to prove to convict you on these charges had you decided to go to trial.  Okay?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  So taking them in order, Count 1 of the superseding information charges you with wire fraud conspiracy.  That's a violation of 18, United States Code, Section 1349.

To convict you on Count 1, the Government has to prove three things, all beyond a reasonable doubt:  First, that two or more persons agreed to commit wire fraud; second, that you were a party to or a member of that agreement; and third, that you joined the agreement or the conspiracy knowing of its objectives to commit wire fraud and intending to join together with at least one other alleged conspirator to achieve those objectives.

That is that you and at least one other alleged conspirator shared a unity of purpose and the intent to achieve

a common goal or objective which be -- which would be to commit wire fraud.

Do you understand the elements of the conspiracy to commit wire fraud charge?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And to establish the underlying offense of wire fraud under 18, United States Code, Section 1343, the Government would have to prove three things, all beyond a reasonable doubt:

First, that you knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises, or that you willfully participated in such a scheme with knowledge of its fraudulent nature; second, that you acted with the intent to defraud; and third, that in advancing, furthering, or carrying out the scheme, you transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

Do you understand the underlying elements of the wire fraud charge?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Count 2 of the superseding indictment charge -- information -- excuse me, charges you with

aggravated identity theft.  That would be a violation of 18, United States Code, Section 1028(a).

To convict you on Count 2, the Government must prove the following three things beyond a reasonable doubt:  First, that you knowingly transferred, possessed, and/or used without legal authority a means of identification of another person; second, that you knew that the means of identification belonged to a real person; and third, that you did so during and in relation to an enumerated felony here, wire fraud.

Do you understand the elements of Count 2?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The superseding information's Count 3 charges you with conspiracy to launder money.  And that's a violation of 18, United States Code, Section 1956(h).

To convict you of the conspiracy charge, the Government has to prove three things beyond a reasonable doubt:  First, there was an agreement to commit money laundering; second, that you knew the objective of the agreement; third, that you joined the agreement with the intent to further its lawful purpose.

Do you understand the three elements of the conspiracy charge?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And to prove the underlying substantive violation of 18, United States Code, Section 1956, the

Government must prove beyond a reasonable doubt four things:

First, that on or about the dates alleged in the charging document you conducted or attempted to conduct a financial transaction which affected interstate commerce; second, that you conducted the financial transaction with the proceeds of a specified unlawful activity, that is wire fraud; third, that you knew the transaction involved the proceeds of some form of unlawful activity; and fourth, that you conducted the financial transaction with knowledge that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the wire fraud.

Do you understand the four elements of the underlying money laundering charge?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Count 4 of the superseding information charges you with cyberstalking of a minor.  This is a violation of 18, United States Code, Sections 2661A(2) and B(a).

To convict you on Count 4 of the superseding information, the Government must prove the following four things beyond a reasonable doubt:

First, with the intent to kill, injure, harass, intimidate, or place under surveillance with the intent to kill, injure, harass, or intimidate another person, you used the mail, any interactive computer service, or electronic

communication service, or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that; third, caused, attempted to cause, or would reasonably be expected to cause substantial emotional distress to that person, an immediate family member, or a spouse or intimate partner; and four, that the victim of this offense was under the age of 18.

Do you understand the elements to Count 4?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Count 5 charges you with malicious conveyance of false information about explosives.  That is a violation of 18, United States Code, Section 844(e).  And to convict you of Count 5, the Government must prove the following six elements, all beyond a reasonable doubt:

First, that you, through the use of mail, telephone, telegraph, or other instrument of interstate or foreign commerce, maliciously conveyed false information in and affecting interstate or foreign commerce, knowing it to be false, concerning an attempt or alleged attempt being made or to be made to kill, injure, or intimidate any individual or unlawfully damage or destroy any building, vehicle, or other real or personal property; and, six, by means of fire or an explosive.

Do you understand the elements to the malicious conveyance of false information about explosives charge?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And there is a sentencing enhancement applicable here for the commission of that offense while you were on pretrial release.  The three elements of the sentencing enhancement would be that you were released pursuant to the Bail Reform Act of 1966; that you were notified of the effect of committing an offense while you were on pretrial release; and that, third, you committed an offense while on pretrial release.

You understand the elements that would make that sentencing enhancement applicable to you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.

Ms. Wolfe, how would you like to present the factual basis of the plea today?  I have read the guilty plea memorandum.  Obviously, it's a -- it's a lengthy factual basis.

MS. WOLFE:  Yes, Your Honor.

THE COURT:  How would you like to proceed?

MS. WOLFE:  I think if the Defendant -- if you were to question the Defendant, that he has read it thoroughly and discussed it with his counsel and agrees that that is a -- an accurate recitation of the facts, I don't need to read it out in Court.

THE COURT:  That's fine.

Justin, fine by you?

MR. DANILEWITZ:  Can I just consult with Mr. Williams, Your Honor?

THE COURT:  Of course, absolutely.

(Pause in proceedings.)

MR. DANILEWITZ:  Okay.  Your Honor, I've consulted with Mr. Williams, and he's had sufficient time to read it and tells me that he has read it.

THE COURT:  Very well.  Okay.  And I'll ask him a few questions here.

So, Mr. Williams, you see there in front of you with counsel, the -- what we refer to as -- this is the Government's change of plea memorandum.  And I'm focused on section -- Roman numeral IV, which is titled "Factual Basis for the Plea."  You see where that begins there toward the bottom of page 9?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And the factual basis for your plea runs from the bottom there of page 9 all the way to the end of the document on page 16.

Do you see all those pages there?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And have you read pages 9 through 16 of the Government's change of plea memorandum stating the factual basis for your plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And have you discussed that aspect

of the change of plea memorandum with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  When you went over -- when you read and discussed the factual basis for your plea, did you note any mistakes or errors or anything that you contend is inaccurate or untrue in there?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Do you understand that you have the right to have all of the facts that are stated in pages 9 through 16 of the change of plea memorandum submitted to a jury and proved beyond a reasonable doubt?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you agree that pages 9 through 16 of the change of plea memorandum correctly and accurately summarize the factual basis for your plea, that you will have admitted these facts?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that I may then use these facts to enhance your criminal history category, your total offense level, or for any other reason during your sentencing?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In light of these circumstances, do you agree that the Government, on pages 9 through 16 of its change of plea memorandum, has correctly and accurately summarized the facts of the case against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you do what is stated in pages 9 through 16 of that memorandum, and do you fully admit those facts?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Ms. Wolfe, now we can go over, if you don't mind, the maximum penalties --

MS. WOLFE:  Yes, Your Honor.

THE COURT:  -- that the Defendant faces, obviously, to include any mandatory minimums, fines, and assessments.

MS. WOLFE:  Yes, Your Honor.

On Count 1, conspiracy to commit wire fraud, the Defendant faces a maximum of 20 years imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

On Count 2, aggravated identity theft, he faces a mandatory two years' imprisonment to run consecutive to any other sentence, 1 year of supervised release, a $250,000 fine, and a $100 special assessment.

On Count 3, conspiracy to commit money laundering, the maximum penalty is 20 years imprisonment, three years supervised release, a fine of $500,000 or twice the value of the property involved in the transactions, whichever is greater, and a $100 special assessment.

On Count 4, cyberstalking of a minor, he faces up to

10 years imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

Count 5, maliciously conveying false information about explosives, the maximum penalty is 10 years imprisonment, three years supervised release, a fine of $250,000, and a $100 special assessment.

And the sentencing enhancement of committing offenses with while on release applies to Counts 1, 3, 4, and 5.  For each of those, he faces 10 years imprisonment to run consecutive to any other sentence.

THE COURT:  Yeah, thank you for clarifying that the enhancement applies to those multiple counts.  I might --

MS. WOLFE:  Yes.

THE COURT:  Yes, I might have focused on just the one when I read it earlier.

MS. WOLFE:  Yes, Your Honor.

THE COURT:  Okay.  So his total maximum exposure now is?

MS. WOLFE:  Sixty-two years imprisonment, a 40-year sentence consecutive to any other sentence imposed, a two-year mandatory minimum sentence consecutive to any other sentence imposed, three years of supervised release, a $1.5 million fine or a fine of 1 million plus twice the value of the property involved in the transactions charged in Count 3, whichever is greater, and a $500 special assessment.

Full restitution is required, as well as forfeiture of any property that was derived from proceeds traceable to the commission of Count 1.

And for Count 3, forfeiture, property involved in such offenses and property traceable to the property -- such property.

THE COURT:  I appreciate that.  Thank you.

MS. WOLFE:  Thank you.

THE COURT:  Mr. Danilewitz, has Ms. Wolfe correctly stated the potential maximum penalties to include the mandatory minimum penalties that your client faces?

MR. DANILEWITZ:  She has, Your Honor.

THE COURT:  All right.

And, Mr. Williams, do you understand that the maximum penalties that you face in this case are those stated by the prosecutor, as well as the mandatory minimum penalties that you face?

Do you understand both the mandatory minimum penalties you face and the total maximum penalties you face?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  I want to touch briefly with you on the Sentencing Guidelines, which we established earlier, I know you've talked to your lawyer about.

Do you understand that those guidelines are advisory? That means they are not binding upon the probation office who

will recommend the guideline range to me, or me?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In other words, no matter what the probation office thinks the guidelines say, or what the prosecutors think the guidelines say, or what you or your lawyer think the guidelines say, none of that is binding on me because I am the one who is ultimately responsible to decide how the guidelines are to operate in your case.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that I will not be able to determine how the guidelines will be applied in your case until after the Presentence Investigation Report is completed and you and the Government have had the opportunity to review that report and challenge any facts in it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand that in appropriate circumstances, and in light of the legal factors that I talked about with you earlier, I could impose a sentence which is either more severe or less severe than the sentence which the advisory guidelines recommend?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that you will not be able to withdraw your guilty plea if I impose a more severe sentence than you expect or that anyone else recommends?

THE DEFENDANT:  Yes, Your Honor.

THE COURT: Has anyone promised you or led you to believe that you will receive a particular sentence?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you understand that parole has been abolished in the federal system, and that you will not be released on parole if you're sent to prison?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you're sent to prison, a term of supervised release will be imposed for when you are released from prison?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that if you violate the terms of your supervised release, you could be returned to jail?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Williams, have you discussed with your lawyer the charges against you, your right to contest them, and the maximum possible penalties you face?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that by pleading guilty and by waiving the rights that I've discussed with you, you cannot later come to any court and claim that you were not guilty or that your rights have been violated?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anyone threatened you, coerced you, or forced you in any way to plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone promised you or offered you anything to get you to plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you have any agreement with the Government other than the written guilty plea agreement that has been stated on the record here today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you understand that a plea of guilty may be used against you by the Government in a possible civil action to collect taxes and penalties?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that the offenses to which you are pleading guilty are felony offenses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that if I accept your plea, you will be adjudged guilty of these offenses and that such an adjudication could deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Williams, having heard from me what your rights are if you plead not guilty and what might occur if you plead not -- if you plead guilty, do you still wish to give

up your rights to a trial and plead guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do either counsel have any doubt as to the Defendant's competence to enter a plea?

MR. DANILEWITZ:  No, Your Honor.

MS. WOLFE:  No, Your Honor.

THE COURT:  Are counsel satisfied that his willingness to plead guilty is voluntary?

MR. DANILEWITZ:  Yes, Your Honor.

MS. WOLFE:  Yes, Your Honor.

THE COURT:  Are counsel satisfied that his plea is not based on any agreement except the written guilty plea agreement discussed here today?

MR. DANILEWITZ:  Yes, Your Honor.

MS. WOLFE:  Yes, Your Honor.

THE COURT:  Are counsel satisfied that his guilty plea is being made with his full understanding of the nature of the charges, the maximum possible penalties, and mandatory minimum penalties he faces, and his legal rights to contest the charges?

MR. DANILEWITZ:  Yes, Your Honor.

MS. WOLFE:  Yes, Your Honor.

THE COURT:  Are counsel satisfied that there is a factual basis for the plea?

MR. DANILEWITZ:  Yes, Your Honor.

MS. WOLFE:  Yes, Your Honor.

THE COURT:  Do either attorney have any questions or anything else they would like to say before Mrs. Rolon takes the new plea?

MR. DANILEWITZ:  I do not, Your Honor, but I did discuss with Ms. Rolon and Ms. Wolfe a very brief paragraph statement that Mr. Williams would like to make, if that's okay.

THE COURT:  That's okay, Mr. Williams.  You're going to have obviously the opportunity to address me more fully at your sentencing, but if there is anything else you would like to say at this time, feel free.

THE DEFENDANT:  Your Honor, I realize how bad all this conduct looks.  I just want you to know that thus far, I've done everything in my power to try and right these wrongs, and I will continue to do so.

I do not believe any victims are present today, but on the record, I just want them to know that I'm deeply sorry.  This isn't the person I want to be remembered as.  And I've already wasted years of my life I will never get back because of this.

And I've spent much time reflecting on the person I was and the man I want to become.  And I apologize to the Court and fully accept responsibility.  Thank you, Your Honor.

THE COURT:  Very well.  Thank you, Mr. Williams.

So I, first, will find that based on my colloquy here

with Mr. Williams and counsel, that his waiver of indictment was knowing, intelligent, and voluntary.  And I accept the waiver.

And now if the Deputy would take the plea.

THE DEPUTY CLERK:  Braiden Williams, you have been charged by way of information filed by the United States Attorney under No. 24CR388, charging you with:

Count 1, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 and 3147.

Count 2, aggravated identity theft, in violation of Title 18, United States Code, Section 1028(a).

Count 3, conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) and 3147.

Count 4, cyberstalking of a minor, in violation of Title 18, United States Code, Section 2261A(2)(B), 2261B(a), and 3147.

And Count 5, maliciously conveying false information about explosives, in violation of Title 18, United States Code, Section 844(e) and 3147.

How do you plead, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE DEPUTY CLERK:  Thank you.

THE COURT:  And, Mr. Williams, are you pleading guilty because you are, in fact, guilty as charged?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Well, based on our colloquy here this morning, I can find, again, that the Defendant is competent to waive his right to indictment and to enter an informed plea.

I find that his plea of guilty is knowing, voluntary, and intelligently made and is not the right result of any force or threats or promises apart from what is contained in his written guilty plea agreement.

I find there's a factual basis for his plea of guilty, that there is no agreement between the Defendant and the Government other than what is contained in the written guilty plea agreement, which is of record.

I find that he, the Defendant, understands the charges, his legal rights, and the maximum possible penalties and mandatory minimum penalties he faces.

I find the Defendant understands he is waiving his right to a trial, and that he understands that he has waived his appellate rights except under the four specific circumstances stated by the Court, and that he is only permitted to collaterally attack his sentence under a theory of constitutionally ineffective assistance of counsel as to the execution of the plea agreement and the entry of his guilty plea.

And based on those findings, I accept the Defendant's guilty plea, and he is now adjudged guilty.

I'll order a Presentence Investigation Report to be prepared by the probation office.

As I mentioned earlier, you and your attorney will have the opportunity to read and to comment upon that report before your sentencing.

Under Federal Rule of Criminal Procedure 32(f)(1) and (2), both parties must inform each other, the probation officer, in writing of any objections to the presentence report within 14 days of receiving it.  And under Local Rule of Criminal Procedure 32.3, paragraph 4, untimely objections to the Presentence Report are deemed waived.

As I also mentioned earlier, you and others, if you wish, will have the opportunity to speak on your behalf at your sentencing hearing. We have currently scheduled your sentencing hearing for Thursday, February 26, 2026, at 10 a.m. here in Courtroom 11A.

And sentencing memoranda should be delivered to the Court no later than one full calendar week before sentencing date.

That's all I have.  Are there any other matters counsel wishes to discuss?

MR. DANILEWITZ:  No, Your Honor.

MS. WOLFE:  No, Your Honor.

THE COURT:  Very good.

Okay.  Then we're adjourned.

MR. DANILEWITZ:  Thank you, Your Honor.

MS. WOLFE:  Thank you, Your Honor.

THE DEPUTY CLERK:  All rise.

(Court adjourned.)

CERTIFICATION

I, Jaquetta Bazier, Court-approved transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          November 25, 2025_____

Signature of Transcriber          Date